```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
JASON GARCIA,                       :
                                    :
            Plaintiff,              :
                                    :
       -against-                    :        Opinion & Order
                                    :        05 Civ. 9587 (SCR)(JFK)
DET. C. GRECO, DET. FAGAN,          :
DET. McKEMIS, DET. PASTORE,         :
DET. WILLIAM OLSZEWSKI, and the     :
NEW ROCHELLE POLICE DEPARTMENT,     :
                                    :
            Defendants.             :
-----------------------------------X
```

APPEARANCES

    PLAINTIFF, JASON GARCIA, PRO SE

    FOR DEFENDANT, DETECTIVE CHRISTOPHER GRECO:

        Lalit K. Loomba, Esq.
        Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
        3 Gannett Drive
        White Plains, New York 10604

**JOHN F. KEENAN, United States District Judge**:

Plaintiff Jason Garcia ("Garcia" or "Plaintiff") brings this action, pro se, under 42 U.S.C. § 1983 alleging that members of the New Rochelle Police Department ("NRPD") used excessive force in carrying out his June 9, 2005 arrest. Defendant Detective Christopher Greco ("Greco" or "Defendant") moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on grounds of judicial estoppel, qualified immunity, and that Garcia cannot establish that Greco used a constitutionally unreasonable degree of force in

1

participating in Garcia's arrest. For the following reasons, Defendant's motion is granted.[1]

## I. Factual Background

### A. The Underlying Incident

The following facts are undisputed unless otherwise noted. Members of the NRPD conducted surveillance of Garfield Street in Yonkers, New York on the evening of June 9, 2005 in connection with a potentially armed suspect — Garcia — who had fled from police a day earlier. At or about 8:30 p.m., after Greco and Detective John Pastore positively identified Garcia as the suspect, members of the NRPD confronted Garcia near a gas station on Yonkers Avenue off Walnut Street. (Def. Ex. A).

According to Greco's police report, he verbally identified himself to Garcia, at which point Garcia immediately fled toward Walnut Street. (Id.). He was intercepted by Detective Michael T. McKennis and a physical altercation ensued between the two as Garcia allegedly punched and kicked the officers to prevent his arrest. (Id.). Garcia was handcuffed, taken into custody, and transported to NRPD headquarters. (Id.). Detective Pastore sustained a torn ligament in his left thumb that prevented him from returning to duty for three weeks. (Def. Ex. M). Another

---

[1] This motion is before me with the consent of the Honorable Stephen Robinson, before whom the motion was originally filed. See Rule 13 of the Local Rules for the Division of Business among District Judges.

arresting officer, Detective Fagan, sustained a hematoma of his left ring finger and abrasions to both knees during Garcia's arrest. (Def. Ex. N). Detective McKennis sustained unspecified injuries but did not seek medical attention. (Def. Ex. A).

According to Garcia, after leaving his mother's home, Greco emerged from a white car with a gun and began to chase him. (Def. Ex. K at 53:17-21; 58:21-25). After Garcia turned and ran, another "plain clothes guy" approached and kicked him in the shin. (Id. at 60:8-19). Garcia claims that he fell, got up, and then several officers grabbed and tackled him to the ground and repeatedly struck him. (Id. at 60:13-25). Specifically, Garcia claims that "without identifying themselves, the officers (all 5) knocked [him] down, hitting [him] with their fists, and hit [him] with their radios." (Def. Ex. I, ¶ II(D)). Garcia further alleges that after he was handcuffed and placed in a police squad car one of the officers slapped him. (Def. Ex. K at 61:25-62:24).

Garcia claims he was lying face-down on the ground during the alleged use of excessive force and therefore could not see which officer was hitting him. (Id. at 89:14-21; Def. Ex. I, ¶ II(D)). Nonetheless, Garcia maintains that Greco hit him:

> Q. All Right. My question is: How do you know? If your face was down, how can you be sure it was Greco that was hitting you as opposed to one of the other officers?

3

> A:   Because he was the second one up . . ., [he] tackled me first.  When the first guy kicked me, in the shin, Greco was the second guy following right behind following in pursuit.  So yes, I'm sure that Christopher Greco did put his hands on me. . . . I know he hit me.  You think he's just going to sit there and let me do whatever, saying that I assaulted his officer?  . . . . He was right there, I know he hit me.  I'm sure he did.
> Q.   Is that because he was the second officer on the scene; is that the basis?
> A.   Yes, sir.

(Id. at 88:20-89:13).  Garcia asserts that, during the arrest, he did not try to defend himself, claiming he did not punch any of the officers, strike any of the officers with his hands, kick at any of the officers with his feet, or otherwise "resist the arrest." (Id. at 73:3-25; 85:19-21).

According to Greco's police report, after being brought to NRPD headquarters, Garcia complained that he was suffering an asthma attack and required medical attention.  (Def. Ex. A). According to his medical records, after the arrest, Garcia complained of shortness of breath and pain in his left shin, right elbow, and face. (Def. Ex. L).  The notes of the diagnosing physician list the "Presenting Problem" as "[s]hortness of breath" and the "Patient Complaint" as "difficulty breathing."  (Id.).  Garcia was diagnosed with Dyspnea (shortness of breath) and exacerbation of asthma.  His medical records reflect that at the time of his hospital visit

he was a smoker. (Id.). Garcia was also diagnosed with a facial abrasion, though x-ray exams showed no evidence of "fracture, dislocation or other significant osseous or soft tissue abnormality." (Id.). Garcia was discharged to police custody after his breathing stabilized. (Id.).

### B.  Criminal Charges and Plea Allocution

Garcia previously had served roughly fifteen months in state custody stemming from an August 10, 2003 incident in which he shot a man with a .387 automatic handgun in a bar in Pelham, New York. (Def. Ex. K at 18:21-21:21). In connection with that incident, Garcia pleaded guilty to criminal possession of a weapon in the third degree and second degree assault. (Def. Ex. K at 14:24-15:19; 21:22-22:8).

Following his June 9, 2005 arrest, Garcia was charged with criminal possession of stolen property, criminal possession of a weapon, assault with intent to prevent a police officer from performing a lawful duty, and resisting arrest. (Def. Ex. C).

On October 5, 2005, Garcia pleaded guilty in Westchester County Supreme Court to reduced charges of attempted criminal possession of a weapon in the third degree, in violation of New York Penal Law § 265.01, and attempted assault in the second degree with intent to cause physical injury to a police officer, in violation of New York Penal Law § 129.05. In the plea allocution, Garcia stated that he understood his statements

could be used against him in other judicial proceedings. (Id. at 13:20-24). Garcia also admitted:

> MR. MOORE: [O]n or about June 9th, 2005 with intent to prevent the police officers from performing a lawful duty did [you] attempt to cause physical injury to said police officer, to wit, Detective Pastore of the New Rochelle Police?
> THE DEFENDANT: Yes.
> MR. MOORE: Yes?
> THE DEFENDANT: Yes.

(Def. Ex. D at 14:12-23). Garcia was sentenced as a predicate felon and received concurrent sentences of two to four years for each charge. (Def. Ex. E at 20:5-17). When asked whether he had anything to say at his sentencing, Garcia responded: "Fuck you all. That's it." (Id. at 19:23-24).

## C.   The Instant Action

On November 14, 2005, Garcia commenced this action seeking monetary compensation for the injuries allegedly sustained during his arrest.[2] Although the complaint names Detectives Fagan, McKemis [sic], Pastore, Olszewski, and the New Rochelle Police Department as additional defendants, only Greco was served a summons and complaint. Therefore, Greco is the only defendant in this action.

---

[2] In his complaint, Plaintiff also requests that "[t]he people responsible for my injuries . . . face charges," relief which is not within the power of the Court to grant.

## II.  Applicable Legal Standards

### A.  Summary Judgment

Summary judgment is warranted when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A genuine issue exists for summary judgment purposes "where the evidence is such that a reasonable jury could decide in the non-movant's favor."  Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citing Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)).  Thus, when determining whether such fact issues do exist, the court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  Summary judgment is appropriate when the non-moving party has no evidentiary support for an essential element for which it bears the burden of proof.  Celotex, 477 U.S. at 322–23.  "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]."

Hayut v. State Univ. of N.Y., 352 F.3d 733, 743 (2d Cir. 2003) (alterations in original).

It is well established that "the submissions of a pro se litigant must be construed liberally and interpreted to raise the strongest arguments that they support." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotations and citations omitted). Nevertheless, a pro se litigant cannot oppose a summary judgment motion by solely relying on conclusory allegations or denials; instead, he must produce "some affirmative indication that his version of relevant events is not fanciful." Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980).

B.  Stating a Claim for Excessive Force Under § 1983

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it described." Baker v. McCollam, 443 U.S. 137, 145 n.3 (1979). To establish liability under § 1983, a plaintiff must show that (1) the defendant acted under color of state law; and (2) the defendant's conduct or actions deprived plaintiff of rights, privileges, or immunities guaranteed by the Constitution. See Washington v. County of Rockland, 373 F.3d 310, 315 (2d Cir. 2004).

A claim of excessive force in the context of an arrest is premised on the principle that the Fourth Amendment right to be free from "unreasonable" seizure limits the methods law enforcement officers may use to arrest a suspect. See Hemphill v. Schott, 141 F.3d 412, 418 (2d Cir. 1998) (quoting Graham v. Connor, 490 U.S. 386, 397 (1989)). A police officer is deemed to have personally participated in the use of excessive force if he either (1) directly participates in the use of excessive force, or (2) fails to intervene on behalf of the victim of excessive force despite being present and having the opportunity to act. Id.; see also Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 129 (2d Cir. 1997); Smart v. City of N.Y., No. 08 Civ. 2203, 2009 WL 862281, at *3 (S.D.N.Y. Apr. 1, 2006).

Although a police officer may be justified in using some degree of force when making an arrest, the officer is not entitled to use an unlimited amount of force, even where the arrestee resists or assaults the officer. "The force used by the officer must be reasonably related to the nature of resistance and the force used, threatened, or reasonably perceived to be threatened, against the officer." Sullivan v. Gagnier, 225 F.3d 161, 166 (2d Cir. 2000). The court must examine the totality of the circumstances, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and

9

whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396.

"The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers,' violates the Fourth Amendment." Id. (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)). In fact-specific cases such as this, granting summary judgment against a plaintiff on an excessive force claim is appropriate where "no reasonable factfinder could conclude that the officers' conduct was objectively unreasonable." Amnesty Am. v. Town of West Hartford, 361 F.3d 113, 123 (2d Cir. 2004). Thus, to prevail on a motion for summary judgment, the evidence must show that "no rational jury could [find] that the force used was so excessive that no reasonable officer would have made the same choice." Lennon v. Miller, 66 F.3d 416, 426 (2d Cir. 1995).

### C. Qualified Immunity

Qualified immunity "'shields police officers acting in their official capacity from suits for damages . . . unless their actions violate clearly-established rights of which an objectively reasonable official would have known.'" Jones v. Parmley, 465 F.3d 46, 55 (2d Cir. 2002) (quoting Thomas v.

10

Roach, 165 F.3d 137, 142 (2d Cir. 1999)).  When deciding a motion for summary judgment in a § 1983 case, the court first determines whether, "[t]aken in the light most favorable to the party asserting the injury, the facts alleged show that the [defendants'] conduct violated a constitutional right . . . and only thereafter consider whether qualified immunity shields individual defendants."  Russo v. City of Bridgeport, 479 F.3d 196, 205 (2007) (internal quotation marks and citations omitted).  If, while construing the facts in plaintiff's favor, no constitutional or statutory right was violated, the court need not inquire further.  Saucier v. Katz, 533 U.S. 194, 201 (2001).

If, however, "a violation could be made out on a favorable view of the parties' submission, the next sequential step is to ask whether the right was clearly established."  Id.  "A defendant is entitled to qualified immunity only if he can show that, viewing the evidence in the light most favorable to plaintiff, no reasonable jury could conclude that the defendant acted unreasonably in light of the clearly established law."  Ford v. Moore, 237 F.3d 156, 162 (2d Cir. 2001).  Thus, government officials will be immune from liability if they can establish that it was objectively reasonable for them to believe their actions were lawful at the time.  Moore v. Vega, 371 F.3d 119, 114 (2d Cir. 2004).

### III. Analysis

As a preliminary matter, it is undisputed that Defendant Greco acted "under color of state law" in his capacity as an officer of the NRPD. Therefore, liability under § 1983 hinges on whether Defendant deprived Plaintiff of his constitutional rights. Plaintiff's allegation of excessive force, if true, deprived Plaintiff of rights protected by the Fourth Amendment of the Constitution that he claims were violated by the Defendant during the arrest at issue.

Defendant argues that Plaintiff's claim fails as a matter of law because: (1) Plaintiff should be estopped from introducing his own deposition testimony and therefore cannot produce evidence of excessive force; and (2) the use of force was objectively reasonable under the circumstances. Defendant further argues that, even if the Court finds that there is sufficient evidence that Plaintiff was deprived of his Fourth Amendment rights, he is protected by qualified immunity.

#### A.   Judicial Estoppel Does Not Bar Garcia's Claim

Defendant argues that Plaintiff is judicially estopped from relying on his deposition because Plaintiff's admission of guilt as to the charge of attempted assault is inconsistent with deposition testimony that he did not resist arrest. Defendant further claims that because Plaintiff has produced no evidence other than his deposition testimony, judicial estoppel bars

12

Plaintiff's reliance on the deposition in this action and, in turn, bars Plaintiff's claim.

Judicial estoppel "prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by him in a prior legal proceeding." Bates v. Long Island R.R. Co., 997 F.2d 1028, 1037 (2d Cir. 1993). The purposes of judicial estoppel are to "preserve the sanctity of the oath" and to "protect judicial integrity by avoiding the risk of inconsistent results in two proceedings." Simon v. Safelite Glass Corp., 128 F.3d 68, 71 (2d Cir. 1997). A party may invoke judicial estoppel where "(1) the party against whom the estoppel is asserted took an inconsistent position in a prior proceeding, and (2) that position was adopted by the first tribunal." Perlleshi v. County of Westchester, No. 98 Civ. 6927, 2000 WL 554294, at *5 (S.D.N.Y. Apr. 24, 2000).

In Perlleshi, the court held that the plaintiff was estopped from claiming that the defendant police officer used excessive force in effecting his arrest because the claim was "completely at odds with" the plaintiff's sworn statements while pleading guilty to resisting arrest. Id., at *6. The court found that plaintiff had effectively provided two completely contradictory versions of the facts — one in which the plaintiff explicitly stated that he had struggled violently with the

13

police, and one in which the plaintiff swore he was the passive victim of excessive force.  Id.

As in Perlleshi, in the case at bar, Plaintiff's deposition testimony contradicts his sworn plea allocution.  According to Plaintiff's deposition, he was a passive victim who did not resist arrest even in the face of excessive force.  (Def. Ex. K at 85:19-21).  Yet even if Plaintiff did not kick, punch, or strike any of the officers during his arrest (Id. at 73:3-25), by his own admission in state court, it was not for lack of trying.

Although he did not plead guilty to the charge of resisting arrest, Plaintiff pleaded guilty to attempted assault of a police officer who was trying to arrest him.  Plaintiff's admission inherently means he resisted arrest.  In exchange for Plaintiff's guilty plea, the state prosecutor reduced the charge of assault to attempted assault in the second degree and dropped the charge of resisting arrest, among other things.  Having obtained the benefits of a favorable plea by making sworn admissions in open court, Plaintiff cannot now also claim to be the passive victim as depicted in his deposition.

Contrary to what Defendant argues, however, the application of judicial estoppel in this case does not completely bar Plaintiff's claim.  Claims of excessive force and resisting arrest are not mutually exclusive.  See Sulivan, 225 F.3d at

167. Although Plaintiff has not produced any evidence aside from his deposition, he is not estopped from relying on all parts of the deposition — only those parts in which he portrayed himself as a passive victim. Plaintiff has put forth some evidence, however scant, that Defendant used force in effecting his arrest. Thus, the issue before the Court is whether Defendant's use of force was objectively reasonable in light of Plaintiff's conduct during the arrest.

### B.   Greco's Use of Force Was Objectively Reasonable

Adopting the perspective of a reasonably prudent officer facing the situation that confronted Defendant, and drawing all reasonable inferences in Plaintiff's favor, the Court finds that Defendant's actions were objectively reasonable. Plaintiff has submitted no evidence, let alone pleaded facts, to call this conclusion into doubt.

Defendant had a reasonable belief that Plaintiff might be armed and, therefore, dangerous, as he was allegedly armed with a loaded semi-automatic handgun while fleeing from officers the previous day. (Def. Ex. A). Defendant's interest in preventing the escape of a gun-wielding fugitive, as well as his interest in the safety of his fellow officers, supports the reasonableness of Defendant's use of force in arresting Plaintiff.

15

Moreover, "[t]he balancing inquiry for an excessive force claim may . . . take resistance to an arrest into account as a highly probative fact." Sullivan, 225 F.3d at 165. By Plaintiff's own admission, he actively resisted arrest, first by attempting to flee, then by attempting to assault a police officer in order to prevent his arrest and injure the officer. Detectives Fagan and McKennis sustained injuries as a result of Plaintiff's resistance during arrest, while Pastore sustained a significant injury that restricted him from active duty for three weeks.

"Additionally, although the severity of plaintiff's alleged injuries is not dispositive, it is nonetheless highly relevant to the reasonableness of the force applied." Johnson v. Police Officer #17969, No. 99 Civ. 3964, 2000 WL 1877090, at *5 (S.D.N.Y. Dec. 27, 2000). In some instances, the allegedly unconstitutional act and injury may be so de minimis that the act cannot rise to the level of a constitutional violation as a matter of law. See Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993) ("[A] de minimis use of force will rarely suffice to state a constitutional claim."); Vogeler v. Colbath, No. 04 Civ. 6071, 2005 WL 2482549, at *11 (S.D.N.Y. Oct. 6, 2005) (granting summary judgment for defendant police officer where plaintiffs failed to demonstrate that the alleged conduct by said officer "was any more than de minimis force exerted during the course of

16

an arrest following the raid of a suspected drug trafficking locale").

In this case, a review of Plaintiff's medical records reveals that he was taken to the hospital and monitored due to "difficulty breathing" and "shortness of breath." (Def. Ex. L). While these symptoms were likely caused, at least in part, by Plaintiff's history of asthma and smoking, (Id.), they were no doubt exacerbated by Plaintiff's attempt to flee from police and the exertion caused by his subsequent attempt to assault an officer. Although Plaintiff also reported pain to the left shin, right elbow, and face, Plaintiff was hospitalized for his difficulty breathing; x-rays demonstrated he did not need treatment for his other claimed minor injuries. (Id.). At the time of release — about an hour and a half after being admitted to the hospital — Plaintiff's medical record indicates he was "NOW MUCH BETTER, NO DISTRESS." (Id.).

Although it is not at all clear that Defendant — the second officer to arrive on the scene, according to Plaintiff — used any force at all against Defendant, Plaintiff's deposition testimony and medical records, at best, establish that Defendant used the requisite amount of force necessary to subdue and detain a potentially armed and dangerous fleeing suspect. Considering the danger Plaintiff posed to Defendant, and the very limited nature of Plaintiff's injuries, the Court concludes

17

that no reasonable jury could find that Defendant's use of force rose to the level of a constitutional violation.

Case law in the area supports the Court's conclusion that, "[i]n light of the facts and circumstances as presented to the Defendant at the time of Plaintiff's arrest," Graham, 490 U.S. at 397, Defendant did not use greater force than was reasonably necessary. See Williams v. City of N.Y., No. 05 Civ. 10230, 2007 WL 2214390, at *11 (S.D.N.Y. July 26, 2007) (granting summary judgment on excessive force claim and determining that de minimis injuries of scrapes and bruises "cannot rise to the level of a constitutional violation as a matter of law"); Rincon v. City of N.Y., No. 03 Civ. 8276, 2005 WL 646080, at *4–5 (S.D.N.Y. Mar. 21, 2005) (granting summary judgment on excessive force claim where plaintiff was treated only for swelling in the right leg and wrist despite having alleged that the force of being thrown to the ground caused "the stitches on her leg [to] split open"); Cunningham v. Rodriguez, No. 01 Civ. 1123, 2002 WL 31654960, at *5 (S.D.N.Y. Nov. 22, 2002) (granting summary judgment on excessive force claim where alleged injuries of neck, shoulder, lower back, and hip pain, reported one week after incident giving rise to the alleged injuries, were de minimis); Johnson v. Police Officer #17969, 2000 WL 1877090, at *5 (dismissing excessive force claim pursuant to Fed. R. Civ. P. 12(c) where plaintiff alleged three injuries — a contusion of

the chest on the left rib cage, unspecified injuries to the right side of the face, and an unspecified injury to his left leg — stemming from an officer wrestling the plaintiff to the ground during an arrest); Hamilton v. Broomfield, No. 95 Civ. 3241, 1998 WL 17697, at *2 (S.D.N.Y. Jan. 2, 1998) (dismissing charges of excessive force pursuant to Rule 12(b)(6) where plaintiff allegedly sustained injuries including a bloody lip, a red mark and swelling on the leg, and pain resulting from overly-restrictive handcuffs).

In sum, viewing the evidence in Plaintiff's favor, given Defendant's reasonable judgment of the situation the Court cannot say that he applied constitutionally impermissible excessive force. Defendant's motion on this claim is thereby granted.

### C. Greco Is Entitled to Qualified Immunity

Even assuming Defendant's use of force was excessive, the Court finds that Defendant nonetheless would be entitled to summary judgment on qualified immunity grounds. Under the particular circumstances presented here — including the threat Plaintiff presented based on his conduct on the day before the arrest, Plaintiff's attempted assault and attempt to flee during the arrest of June 9, 2005, the limited amount of force alleged to have been used by Defendant in effecting the arrest, and the minor nature of the injuries allegedly sustained by Plaintiff

during the arrest — no rational jury could find that the force used was so excessive that no reasonable officer would have made the same choice. In order to take Plaintiff into custody, he had to be seized. Because Plaintiff attempted to flee and attempted to assault an officer, Defendant determined that he would have to detain Plaintiff forcibly. Given that Defendant, at most, used only the amount of force necessary to prevent Plaintiff from fleeing and assaulting an officer, any intrusion on his Fourth Amendment rights was objectively reasonable. Therefore, it was objectively reasonable for Defendant to believe that in using the alleged force to effect Plaintiff's arrest, he was not infringing on Plaintiff's Fourth Amendment rights. Defendant, in turn, is entitled to qualified immunity.

### III. Conclusion

The Defendant's motion for summary judgment is granted in its entirety. The Clerk of the Court is directed to close the case.

**SO ORDERED.**

**Dated:**      New York, N.Y.
               February 9, 2010

                                          _____
                                          John F. Keenan
                                          United States District Judge